**MINNESOTA POWER & LIGHT CO.,**
a Minnesota corporation,
Plaintiff–Appellee,

v.

**D. Michael HOCKETT,** Defendant–
Appellant.

No. 00–1898.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 2001.

Decided Aug. 1, 2001.

Before BAUER, MANION and ROVNER, Circuit Judges.

## ORDER

Minnesota Power & Light Company ("MPL") sued Michael Hockett in federal district court to enforce certain non-compete and non-disclosure agreements. The district court entered a preliminary injunction against Hockett, but eventually dismissed the case for lack of subject matter jurisdiction. Hockett then filed a motion with the district court for an award of attorneys' fees under the injunction bond, relying upon Indiana law and based on MPL's alleged bad faith. A magistrate judge recommended, and the district court agreed, that federal law governed and prohibited Hockett's request for attorneys' fees under the injunction bond (although it allowed a request for actual damages) and declined to award such fees as a sanction against MPL. Hockett appeals.

## I.

In 1995, MPL purchased 80% of an auto auction named ADESA Corporation, an Indiana corporation, and other auto-related subsidiaries, of which Michael Hockett was the founder. As part of the transaction, MPL obtained non-compete and non-disclosure agreements from the various shareholders, including Hockett, which al-

lowed them to remain employed at ADE-SA after the purchase.

Because of certain state regulations, MPL could not directly own 100% of ADE-SA Corp.'s stock., so, in 1996, it created a wholly owned subsidiary, ADESA Holdings, Inc., a Minnesota corporation, to purchase the remaining 20% of ADESA Corp.'s stock from Hockett and the other shareholders. Again, Hockett and the shareholders entered into non-compete and non-disclosure agreements, this time with ADESA Corp. and ADESA Holdings, Inc. After the conclusion of the two-part sale, Hockett received approximately $70 million.

But Hockett did not take his money and run. He instead invested in similar auction businesses with his sons that allegedly competed with ADESA and hired several ADESA employees. In December 1997, MPL sued Hockett to enforce the 1996 non-compete and non-disclosure agreements, seeking monetary and injunctive relief. The district court granted a preliminary injunction and MPL posted a $50,000 bond in support of the injunction. Hockett appealed the preliminary injunction to this court. During the pendency of the appeal, the issue of subject matter jurisdiction arose and we remanded the case to the district court for the limited purpose of conducting further proceedings to ascertain subject matter jurisdiction. MPL asserted diversity jurisdiction, alleging the dispute was between itself, a citizen of Minnesota, and Hockett, a citizen of Indiana. On remand, however, the district court concluded that MPL was not the real party in interest (but rather was bringing the case on behalf of ADESA Corp.), and that ADESA Corp. was a necessary and indispensable party, which could not be joined without destroying diversity. MPL appealed this decision, which we affirmed in an unpublished order. *See Minnesota Power & Light Co. v. Hockett*, No. 98–1099, 1999 WL 269755 (7th Cir. Apr.23, 1999).

Hockett then filed a motion for attorneys' fees with the district court. The district court referred the matter to a magistrate judge for recommended disposition. The magistrate judge concluded that federal, not Indiana, law governed Hockett's motion and that under Federal Rule of Civil Procedure 65(c), Hockett could not recover his attorneys' fees as damages. However, the magistrate judge concluded that Hockett could recover actual damages caused by the injunction (up to the amount of the $50,000 bond posted by MPL) by filing a bill of particulars. He gave Hockett 30 days to submit such proof of actual damages or to file a notice of intent not to proceed against the bond. Lastly, the magistrate judge denied Hockett's request for sanctions, concluding that Hockett had not shown bad faith by MPL.

Hockett never sought actual damages. Instead, he filed an objection to the magistrate judge's recommendations with the district court. The district court entered an order accepting the magistrate judge's findings. Hockett appeals.

## II.

### A. Applicable Law

Hockett claims that the district court erred by applying federal law, rather than Indiana law, to his request for attorneys' fees. This court reviews a district court's choice-of-law decision *de novo. See Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 572 (7th Cir.1995).

Before determining which law applies, we begin by looking at the respective federal and state provisions. The Federal Rules of Civil Procedure provide that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of

such *costs and damages* as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c) (emphasis added). The Indiana Trial Rules contain an identical provision. *See* Ind. T.R. 65(C).[1]

However, there are two major differences between the federal rule and the Indiana rule, which, for obvious reasons, make the application of Indiana law more attractive to Hockett. First, under Indiana law, attorneys' fees are included within the scope of "damages" recoverable following the dissolution of an injunction. *See Hampton v. Morgan,* 654 N.E.2d 8, 10 (Ind.Ct.App.1995). In contrast, the Seventh Circuit has determined that, for purposes of Fed.R.Civ.P. 65(c), "costs and damages" damages do not include attorneys' fees. Rather, in the absence of a statute authorizing fees (such as 42 U.S.C. § 1988), an award of attorneys' fees is only proper where the losing party is guilty of bad faith. *Coyne–Delany Co. v. Capital Dev. Bd. of State of Ill.,* 717 F.2d 385, 390 (7th Cir.1983). *See also Esposito v. Piatrowski,* 223 F.3d 497, 500 (7th Cir.2000); *Matek v. Murat,* 862 F.2d 720, 734 (9th Cir.1988); *Fireman's Fund Ins. Co. v. S.E.K. Constr. Co.,* 436 F.2d 1345, 1351 (10th Cir.1971). Second, the Indiana rule allows for recovery in excess of an appeal bond, here $50,000, while the federal rule limits recovery to the amount of the bond, unless the plaintiff was acting in bad faith. *Compare National Sanitary Supply Co. v. Wright,* 644 N.E.2d 903, 905 (Ind.Ct.App. 1994), *with Coyne–Delany Co.,* 717 F.2d at 393–94.

As we have noted, "the applicability of state procedural rules in federal diversity litigation is a knotty issue." *S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist.,* 60 F.3d 305, 309 (7th Cir.1995). To untie this particular knot, we apply the test for resolving conflicts between state law and the Federal Rules set forth by the Supreme Court in *Hanna v. Plumer,* 380 U.S. 460, 471–72, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), and aptly summarized in *Burlington Northern Railroad Co. v. Woods,* 480 U.S. 1, 4–5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987):

> "[t]he initial step is to determine whether, when fairly construed, the scope of [the Federal Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law. The Rule must then be applied if it represents a valid exercise of Congress' rulemaking authority, which originates in the Constitution and has been bestowed on this Court by the Rules Enabling Act, 28 U.S.C. § 2072." [2]

(internal citations omitted). In other words, a "pretty clear case" for applying federal law is where "the state rule is in actual conflict with one of the Federal Rules of Civil Procedure, so that enforcing the state rule would knock out the federal rule." *S.A. Healy Co.,* 60 F.3d at 310.

---

1. "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Ind. T.R. 65(C).

2. Under this test, we consider whether the Rule "represents a valid exercise of Congress'

rulemaking authority." *Burlington Northern Railroad,* 480 U.S. at 5, 107 S.Ct. 967. There is a strong presumption that the Federal Rules of Civil Procedure are valid. *Hanna,* 380 U.S. at 471, 85 S.Ct. 1136. Hockett does not argue that Rule 65(c) is unconstitutional, invalid or that it exceeds the authority of the Rules Enabling Act, 28 U.S.C. § 2072, and we decline to so find. Therefore, we limit our analysis to the first step, i.e., whether the Federal Rule and the state law conflict.

Hockett seeks to recover attorneys' fees, as part of the damages caused by an injunction wrongfully entered against him by MPL in federal court. Thus, the question is whether there is an applicable Federal Rule of Civil Procedure that addresses such a recovery. Indeed there is—Rule 65(c), which requires an applicant for a preliminary injunction to give security for the payment of such "costs and damages" as may be incurred by a party found to have been wrongfully enjoined. Posting such a security, and paying such costs and damages, is the cost of doing business in federal court.[3] Determining the scope of the phrase "costs and damages" is a federal question; certainly a federal court may construe its own rules of procedure. And this court has interpreted this "costs and damages" to not include attorneys' fees. Since the Indiana courts have reached the contrary conclusion and determined that attorneys' fees are recoverable under an injunction bond, there is a direct collision between the Federal Rule and state law, and we must apply the federal law.

Other circuits facing this issue have similarly concluded that federal, not state, law applies. For example, in *Fireman's Fund Ins. Co.*, 436 F.2d at 1351, the Tenth Circuit held that when "an injunction suit is commenced in federal court and an injunction bond is issued pursuant to Rule 65(c), local state law, with respect to recovery of attorneys' fees in an action on the injunction bond, has no application." *See also Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 (9th Cir.2000) (in a proceeding against a surety to enforce a su-

persedeas bond, court concluded that, since the bond was posted pursuant to the Federal Rules, a federal question was involved and therefore the *Erie* rule had no application); 13 James Wm. Moore et al., *Moore's Federal Practice* ¶ 65.53 (3d ed. 1999) ("Federal, not state, law determine what 'costs and damages' are recoverable under bonds given to secure a restraining order or preliminary injunction."). *But see* Wright, Miller & Kane, *11A Federal Practice and Procedure: Civil 2d* § 2974 (2d ed.1995) (suggesting that state law should govern damages recoverable under injunction bond).

Hockett responds by arguing that there is no such "direct collision" because the actual text of Federal Rule 65(c), which refers to "costs and damages," does not mention, and therefore does not foreclose, an award of attorneys' fees. In support of this position, he claims that the First Circuit has interpreted Rule 65(c) as allowing attorneys' fees. *See International Ass'n of Machinists and Aerospace Workers v. Eastern Airlines, Inc.*, 925 F.2d 6, 9–10 (1st Cir.1991). Contrary to Hockett's position, that case involved an award of attorneys' fees under a federal statute, the Norris–LaGuardia Act, that specifically provided for reasonable attorneys' fees. The court merely held that Rule 65(c) did not preclude an award of attorneys' fees pursuant to that statute. This is straightforward. This court has also acknowledged that, irrespective of Rule 65(c), attorneys' fees may be awarded as a sanction where the losing party is guilty of bad faith. *Coyne–Delany Co.*, 717 F.2d at 390.[4]

---

3. Hockett recognized this in his brief in opposition to MPL's complaint where he specifically requested the court to "require the bond posted by Minnesota Power remain in effect *pursuant to Fed.R.Civ.P. 65(c)* pending the resolution of Hockett's claim for costs and damages." (emphasis added).

4. Hockett seeks an award of attorneys' fees as a sanction against MPL, pursuant to 28 U.S.C. § 1927 and the district court's inherent power. Rule 65(c) does not preclude an award under these separate provisions, and we review the district court's denial of sanctions below.

■ Regardless of the actual text of Fed.R.Civ.P. 65(c), or of the Indiana Trial Rule, federal and state case law have interpreted the scope of recoverability on an injunction bond in such a way as to create a direct collision between the rules. Federal courts have interpreted "costs and damages" to exclude attorneys' fees, and Indiana courts have interpreted that phrase to include attorneys' fees. Whether a conflict results from the plain language of the statutes or from case law interpretation of federal and state law is irrelevant—federal law trumps. For instance, in *S.A. Healy Co.*, we addressed whether there was a conflict between a Wisconsin statute, which provided that if a *plaintiff's* settlement demand is rejected, and the plaintiff goes on to win a judgment larger than the demand, he is entitled to costs, and Fed.R.Civ.P. 68, which provides that if a *defendant* makes a settlement offer which is rejected and the plaintiff wins a smaller amount at trial, the plaintiff is liable for costs incurred after making the offer. 60 F.3d at 310–11. Because Rule 68 makes no provision for plaintiff's offers, we found that there was no direct conflict between the rules, and under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, applied the Wisconsin rule. However, we also noted that, if the parties had argued that Federal "Rule 68 should be *interpreted* as if it said outright that no defendant may be penalized for failing to accept a settlement demand[, t]hen we would have a direct conflict, and the Supremacy Clause would be in play." *S.A. Healy Co.*, 60 F.3d at 312 (emphasis added). Here, Fed.R.Civ.P. 65(c) has been interpreted in such a way as to create a direct conflict with Indiana law, and the Supremacy Clause requires that the state rule give way.

Hockett also argues that the right to recover damages in a diversity case for a wrongful injunction is substantive in nature and thus should be governed by state law. However, we need not address the nature of the state law (as either substantive or procedural) if there is a valid and applicable federal law. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 752, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) (after finding no direct conflict between the Federal Rules and Oklahoma law, the Court applied *Erie* principles to determine that substantive state law applied). Rather, where there is a direct conflict between the federal rule and state law, as there is here, the federal rule applies. "To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Hanna*, 380 U.S. at 473–74, 85 S.Ct. 1136.

Hockett also relies on *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), to support his position. In *Alyeska*, the Court held that only Congress could authorize an exception to the "American Rule" that attorneys fees are not ordinarily recoverable by the prevailing litigant in federal litigation. In a footnote, the Court distinguished exceptions to the American Rule, including state statutes in which a fee-shifting provision accompanies a substantive cause of action. In diversity cases involving such state statutes, "where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Id.* at 259 n. 31, 95 S.Ct. 1612 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 54.77(2) (2d ed.1974)). Hockett claims that Indiana law reflects such a substantial state policy, and thus should be applied.

While the Seventh Circuit has repeatedly followed the *Alyeska* rule that the availability of attorneys' fees to prevailing parties in diversity litigation is governed by state law,[5] none of those cases involved a situation, like the present one, in which there was a conflicting federal rule. Moreover, this is not a case where Indiana has provided a fee-shifting provision accompanying a substantive cause of action. Rather, like the federal rule, the Indiana rule merely reflects the cost of doing business in an Indiana state court.

■ Lastly, Hockett argues that Indiana law should apply because the express terms of the 1996 Agreements provided that his rights would be governed by Indiana law. The magistrate judge found that this was an "odd" argument because Hockett had argued that the Agreement was not with MPL, but with ADESA. In any case, such contractual provisions do not require a federal court to apply state procedural rules. *See Fed. Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir.1985). *See also Trustees of Operative Plasterers' and Cement Masons' Local Union Officers and Employees Pension Fund v. Journeymen Plasterers' Protective and Benev. Soc., Local Union No. 5*, 794 F.2d 1217, 1221 n. 8 (7th Cir.1986).

In sum, we conclude that federal law applies to Hockett's request for attorneys' fees under the injunction bond, and, under Fed.R.Civ.P. 65(c), he may not recover them.

## B. Sanctions

Finally, Hockett claims that the district court abused its discretion when it determined that the conduct of MPL and its counsel did not warrant sanctions under 28 U.S.C. § 1927 or the court's inherent power. The magistrate judge found, and the

district court agreed, that MPL's actions did not amount to bad faith. We review for the denial of sanctions for an abuse of discretion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (sanctions under the court's inherent power); *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir.1994) (sanctions under Section 1927).

■ Sanctions under 28 U.S.C. § 1927 are warranted only when an attorney acts in an objectively unreasonable manner. *See Pacific Dunlop Holdings, Inc.*, 22 F.3d at 119–20. Similarly, sanctions under the inherent powers of a district court are warranted only when a party wilfully disobeyed a court order or acted in bad faith, vexatiously, wantonly or for oppressive reasons, thereby committing a fraud upon the court. *See Chambers*, 501 U.S. at 45–46, 111 S.Ct. 2123.

■ Generally, Hockett claims that MPL engaged in misconduct, including concocting subject matter jurisdiction, making false statements in its complaint against him and failing to attach all the proper exhibits, resurrecting matters which it had settled and released with Hockett in a prior lawsuit, falsely certifying that it had given notice to his attorney, tendering and obtaining an *ex parte* temporary restraining order which was over broad, and offering false testimony. MPL, of course, denies Hockett's accusations.

The magistrate judge's reasons for declining to impose sanctions were thoroughly discussed in his December 2, 1999 Entry, and the district court reviewed and approved those findings. Briefly summarized, the magistrate judge and the district

5. *See, e.g., LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 924 (7th Cir.1997); *Jackman v. WMAC Inv. Corp.*, 809 F.2d 377, 383 (7th Cir.1987); *Blue Ribbon Feed Co., Inc. v. Farmers Union Cent. Exch., Inc.*, 731 F.2d 415, 422 (7th Cir.1984).

court concluded that, while perhaps quite aggressive, MPL's actions did not rise to the level of sanctionable conduct. The district court placed particular emphasis on the fact that Hockett never objected to MPL's tactics or behavior until filing his motion for attorneys' fees. These findings are supported by the record, and under the circumstances, we conclude that the district court did not abuse its discretion in declining to impose sanctions upon MPL.

## III.

For the reasons stated herein, we find that Federal Rule of Civil Procedure 65(c) governed and prohibited Hockett's request for attorneys' fees and that the district court did not abuse its discretion is denying his request for sanctions, and accordingly we AFFIRM.